**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH GOODWIN, et al., | ) | CASE NO. 5:14-cv-121 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| THE COUNTY OF SUMMIT, OHIO, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the renewed motion of defendant, The County of Summit, Ohio, to dismiss the complaint and for judgment on the pleadings (Doc. No. 29 ["MTD/MJP"]). Plaintiffs, Keith Goodwin and Keith Heating and Cooling, Inc., oppose the motion (Doc. No. 37 ["MTD/MJP Opp'n"]), and defendant has filed a reply (Doc. No. 40 ["MTD/MJP Reply"]). Also before the Court is plaintiffs' motion for leave to amend the complaint (Doc. No. 35 ["Mot. Amend"]). Defendant opposes the motion to amend (Doc. No. 36 ["Mot. Amend Opp'n"]), and plaintiffs have replied (Doc. No. 38 ["Mot. Amend Reply"]). On June 27, 2016, the Court entertained oral argument on the pending motions. At the conclusion of the motion hearing, the Court took the motions under advisement. For the reasons set forth below, defendant's motion to dismiss and/or for judgment on the pleadings is granted, and plaintiffs' motion to amend is denied.

## I.  PLAINTIFFS' MOTION TO AMEND

Plaintiffs' motion for leave to amend was filed to address arguments raised by defendant

in support of its renewed motion to dismiss the original complaint. (Mot. Amend at 600[1].) Rule 15(a)(2) of the Federal Rules of Civil Procedure governs plaintiffs' motion to amend. It provides, in relevant part, that the Court should "freely give leave" to amend pleadings "when justice so requires." "Nevertheless, denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Courts should freely give leave to amend in the absence of these factors. *Foman*, 371 U.S. at 182.

It is appropriate to address complaint deficiencies identified in a Rule 12 motion to dismiss with an amended pleading. *See generally Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 521 (6th Cir. 2008) (A motion to amend is frequently entertained in conjunction with a motion to dismiss and can serve as an effective way of curing pleading deficiencies and more quickly reaching the merits of a dispute.) (citation omitted). Nonetheless, a motion to amend a complaint should be denied as futile when the complaint as amended would not survive a motion to dismiss. *See Jenkins v. Foot Locker, Inc*., 598 F. App'x 346, 350 (6th Cir. 2015) (citation omitted); *Brown v. Owens Corning Inv. Review Comm*., 622 F.3d 564, 574 (6th Cir. 2010). Indeed, "[f]utility, alone, can constitute a satisfactory ground for denying a motion for leave to amend." *Charity v. GMAC Mortg. Inv., Inc*., No. 4:09-cv-02958, 2010 WL 3648949, at *13 (N.D. Ohio Sept. 14, 2010) (citing *Wiedbrauk v. Lavigne*, 174 F. App'x 993 (6th Cir. 2006)).

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

Thus, in order to rule on plaintiffs' motion to amend, the Court must first determine whether defendants are entitled to judgment on the pleadings on plaintiffs' claims as amended.

## II. BACKGROUND

Because the Court must test the sufficiency of plaintiffs' claims, as amended, all disputed facts are taken from plaintiffs' proposed first amended complaint ("FAC"). (Doc. No. 35-1.) Where necessary, the Court supplements its recitation of the facts with undisputed facts and those for which the Court may properly take judicial notice.

Plaintiff Keith Goodwin ("Goodwin") is the President of plaintiff Keith Heating and Cooling, Inc. ("KH&C") (collectively "plaintiffs"). "KH&C is a commercial and residential heating, ventilation and air conditioning contractor" that maintains its headquarters in Munroe Falls, Ohio. (FAC ¶¶ 4, 5.)

Defendant The County of Summit, Ohio ("the County" or "defendant") "is a chartered governmental entity as authorized by Article X of the Ohio Constitution." (*Id*. ¶ 7.) Relevant to the present action, the County "created, funded, and budgeted" the Summit County Prosecutor's Office, the Summit County Division of Building Standards, the Summit County Board of Control, and the Summit County Department of Consumer Affairs.[2] (*Id*.)

Title IX, Chapter 759, of the Codified Ordinances of Summit County, Ohio, vests in the Director of the Department of Consumer Affairs the authority to refer consumer complaints from citizens for criminal or civil prosecution. (*Id*. ¶ 20.) The County's Consumer Affairs Department is "assigned and charged with the duty and responsibility" under county ordinances, "to assist the Director of Consumer Affairs . . . in mediating and resolving, prior to the institution of any

---

[2] The Department of Consumer Affairs is alternatively referred to in the FAC as the Office of Consumer Affairs and the Consumer Affairs Board.

judicial proceedings, complaints filed with the Office of Consumer Affairs[.]" (*Id*. ¶ 23.)

According to the FAC, on December 26, 2011, the Akron Beacon Journal ("ABJ"), a local print and on-line newspaper, published an article entitled: "Keith Heating & Cooling Troubles Growing." (*Id*. ¶¶ 33, 35.) The article reported that plaintiffs "had engaged in unconscionable consumer sales practices and unfair and deceptive consumer sales practices." (*Id*. ¶ 35.) Much of the information used in the article was sent to a reporter for the ABJ, Bob Dyer, by then-Summit County Director of the Office of Consumer Affairs, Cynthia Sich ("Sich"). (*Id*. ¶¶ 11, 35.) At the direction of Sich, the ABJ article encouraged consumers to file complaints against plaintiffs. (*Id*. ¶ 36.)

On February 16, 2012, a second article appeared in the ABJ "falsely" reporting that 46 written complaints had been received by the County's Office of Consumer Affairs, and that the County continued to receive "a couple more [consumer complaints] every couple of days." (*Id*. ¶ 37, alteration in original.) Like the first article, this article encouraged "anyone with a complaint about Keith Heating" to contact the County. (*Id*. ¶¶ 37-38.) A third article followed shortly thereafter, on March 3, 2012, informing readers that the County had subpoenaed documents and information from plaintiffs, and that plaintiffs were "under scrutiny for charging an illegal 'transaction fee'" to consumers who cancelled their orders within the three-day "buyers' right to cancel" window. (*Id*. ¶ 39.)

In May 2012, the County's Consumer Affairs Office "'investigated' [the] purported consumer complaints against" plaintiffs, without affording plaintiffs notice of the complaints or an opportunity to respond. (*Id*. ¶ 25.) It is undisputed that the consumer complaints, which plaintiffs allege were generated by the ABJ articles, involved allegations that plaintiffs were selling unnecessary and excessively priced furnaces and other appliances to customers by means

4

of misrepresentations and high pressure sales tactics designed to cause consumers to question the safety or efficiency of their existing appliances. Plaintiffs assert that, in investigating these complaints, the County and its agencies willfully ignored "irrefutable" evidence that plaintiffs had not engaged in unconscionable consumer sales practices. (*Id.*)

On October 24, 2012, the County initiated a civil enforcement action against plaintiffs in the Summit County Court of Court of Common Pleas. (*Id.* ¶ 28.) Plaintiffs insist that this was an unprecedented prosecution, as no other "person" has been subject to an enforcement proceeding, under similar circumstances, for violating consumer protection ordinances. (*Id.* ¶ 27.) In its state court complaint, the County alleged that it had reason to believe that plaintiffs had engaged in unconscionable sales practices and had failed to obtain required permits before performing work for customers. (Doc. No. 8-2 (State Complaint ["State Compl."]) ¶¶ 16, 19-20.) Plaintiffs defended the state action and raised several affirmative defenses, including those challenging the constitutionality of the ordinances and the selective nature of the County's prosecution. (Doc. No. 8-5 (State First Amended Answer) at 147-48.)

Plaintiffs also sought relief in federal court. On January 17, 2014, plaintiffs filed the present action, seeking to enjoin the state proceedings and requesting compensatory and punitive damages, attorney's fees, and costs. The original federal complaint, like the answer in the state court, accused the County of selective prosecution, and raised many of the same constitutional challenges advanced in state court. (Doc. No. 1 (Complaint) ¶¶ 23, 58-59.) The complaint also joined as defendants, in addition to the County, several county offices and employees.[3] Rather

---

[3] Specifically, the original complaint named Russell M. Pry, the County's Chief Executive Officer, John Labriola, the Chief Building Official, Cynthia Sich, the former Director of Consumer Affairs, William Miller, Investigator for Consumer Affairs, and Sherri Bevan Walsh, County Prosecutor. (Complaint ¶¶ 8, 9, 11, 13.) Plaintiffs also joined the Department of Building Standards, the Office of Consumer Affairs, and the County Prosecutor's Office as defendants.

than answer the complaint, the County and the other named defendants moved to dismiss, or, in the alternative, to stay the federal action pending resolution of the state proceedings.

In its September 8, 2014 Opinion and Order, the Court determined that it was compelled to abstain from taking immediate action under the principles set forth in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). (Doc. No. 19 ["Op. & Or."].) In addition to imposing a stay on the federal proceedings pending resolution of the state court enforcement action, the Court determined that the County was the only proper party defendant because the various county offices were not *sui juris* and the county employees had only been sued in their official capacities. (Op. & Or. at 422-23.) The Court denied, without prejudice, the remainder of the motion to dismiss.

Back in state court, and after a period of discovery, plaintiffs moved for summary judgment against the County, arguing, in part, that the County failed to follow its own administrative procedures and that the County's claims were barred by impermissible selective enforcement of county ordinances. (Doc. No. 16-1 (State Court Summary Judgment Ruling ["St. MSJ Order"]).) In denying plaintiffs summary judgment, the trial judge found that the County "properly complied with all pertinent ordinance and statutory mandates and that the matter was properly referred to the Prosecutor's Office for further handling after investigation." (*Id*. at 396.) The trial court also rejected plaintiffs' selective enforcement defense, finding that plaintiffs "failed to establish that [they] were singled out for prosecution and/or that [the County] has acted in bad faith." (*Id*. at 397.)

The state court action ultimately proceeded to a bench trial. On March 17, 2015, the trial court entered judgment for plaintiffs, finding that the County had failed to establish any of its claims by a preponderance of the evidence. (Doc. No. 20-1 (State Court Opinion and Order ["St.

6

Judgment."]) at 440.) In support of its judgment, the state trial court issued a 37-page opinion and order containing detailed findings of facts and conclusions of law that all pointed to the state court's ultimate conclusion that plaintiffs had not engaged in unconscionable, unfair, or deceptive consumer sales practices. Specifically, the court found no evidence that plaintiffs had employed "scare tactics" designed to sell unnecessary appliances, offered improper or inaccurate diagnoses to furnace problems, participated in illegal or improper pricing, or otherwise taken unfair advantage of customers. (*Id*. at 469-72.) The court also found that plaintiffs had not failed to obtain the appropriate permits before commencing projects. (*Id*. at 472.) Because the state court ruled that the County did not meet its burden of proof as to its various causes of action, it found that it did not need to reach plaintiffs' argument that the County engages in selective enforcement of its ordinances and makes politically motivated decisions. (*Id*. at 475.)

Following the entry of judgment in state court, plaintiffs moved to reopen the federal action. (Doc. No. 20 (Motion to Reopen).) After the state court had resolved the pending post-trial motions, the Court reopened the present federal action. (Doc. No. 26.) Plaintiffs subsequently moved to amend the complaint. The FAC raises constitutional claims for procedural and substantive due process, equal protection, and unjust taking. It also sets forth state law claims for vindictive enforcement/prosecution, malicious prosecution, and abuse of process. The revised pleading also purports to reassert claims against the county employees this Court had previously dismissed from the action.

The FAC does not clearly distinguish between the various constitutional claims, making it difficult to parse the allegations and assign them to particular causes of action. That said, plaintiffs' procedural due process claim appears to allege that the County and its employees ignored county ordinances and internal policies during the investigation and prosecution of the

civil enforcement action, and failed to provide plaintiffs with a prompt "name-clearing" hearing or follow the County's "must mediate" obligation before seeking enforcement. Plaintiffs further assert (generally) that they were not afforded proper notice of the consumer complaints or an adequate opportunity to respond.

Plaintiffs' substantive due process claim is purportedly based on similar conduct, though it would also seem to rest on allegations that the joined defendants "ignored irrefutable evidence" that plaintiffs had not engaged in unfair or deceptive consumer sales practices. At the motion hearing, plaintiffs' counsel clarified that this claim is also based on the very public nature of the investigation leading up to the prosecution, and the fact that "no one in the history of Summit County" had ever been prosecuted, under similar circumstances, for alleged infractions of the consumer sales practices ordinances.

Likewise, the equal protection claim relies on the selective nature of the prosecution by the Prosecutor's Office. At the motion hearing, plaintiffs' counsel explained that the equal protection violation is presented both in terms of a traditional equal protection claim and a "class of one" claim, where it was alleged that the County was enforcing against plaintiffs county ordinances that it had never enforced against any other citizen under similar circumstances.

The "takings claim," premised on violations of the Fifth and Fourteenth Amendments to the U.S. Constitution, alleges that the County and the other joined defendants "destroyed and economically harmed the business of Plaintiff KH&C and eliminated the livelihood of Plaintiff Goodwin, without any concomitant compensation." (FAC ¶ 56.) The FAC further provides that "there does not exist any adequate or effective state law procedures to provide Plaintiff KH&C or Plaintiff Goodwin such just compensation, or the restoration of the business of Plaintiff KH&C and the livelihood of Plaintiff Goodwin." (*Id.*)

The state law claims of abuse of process, malicious prosecution, and vindictive enforcement/prosecution all rely on allegations that the County, acting through its various boards and county employees, initiated and prosecuted its civil enforcement action in violation of plaintiffs' constitutional rights, without sufficient evidence of wrongdoing by plaintiffs, and for malicious and improper purposes.

### III. DEFENDANT'S MOTION TO DISMISS/MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. **Standard of Review**

Defendant brings its dispositive motion under Rules 12(b)(6) and (c). The standard of review for a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as for a motion to dismiss under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff*, 133 F.3d at 421 (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint") (quotation marks and citations omitted); *see also Williams v. CitiMortgage, Inc.*, 498

F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document") (quotation marks and citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,  570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570 (citation omitted).

In deciding a motion to dismiss and/or a motion for judgment on the pleadings under Rule 12, the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Commercial Money Ctr., Inc. v. Illinois Union*

*Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted). Thus, while a plaintiff is under no obligation to attach to his complaint documents upon which his action is based, a defendant is free to introduce those documents if the plaintiff fails to do so. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* (citation omitted).

Here, defendant invites the Court to consider documents generated during the prior state court action. The state court enforcement action is clearly referenced in the FAC, and the proceedings in the state court are central to plaintiffs' claims. Accordingly, the Court may take judicial notice of the certified copies of these court proceedings without converting the Rule 12 motion into one for summary judgment. *Commercial Money Ctr.*, 821 F. Supp. 2d at 336.

B.    **Discussion**

The County has argued that each cause of action in the FAC is subject to dismissal, as a matter of law, for a variety of reasons. The Court need not reach each and every argument advanced because, even without doing so, there are still multiple reasons why each claim must be dismissed at this juncture. The Court begins its analysis with arguments that apply to multiple claims.

*Res Judicata*

The County argues all of the federal constitutional claims, and most of the state claims, are barred by the doctrine of res judicata because the claims could have been raised and litigated

in the state enforcement action. Further, the County posits that, even if plaintiffs did raise some of their constitutional claims as *defenses* in the state action, they are still barred because they were not raised as *counterclaims*.

"'Federal courts must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered.'" *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (quoting *Hosp. Underwriting Grp., Inc. v. Summit Health Ltd*., 63 F.3d 486, 494 (6th Cir. 1995)). Accordingly, the Court must "look to the law of the rendering state" to determine the preclusive effect of a prior state court judgment. *Id*. (citing *Migra v. Warren City Sch. Dist. Bd. of Educ*., 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)). In this case, the Court looks to Ohio law.

Under Ohio law, "[r]es judicata, i.e., the preclusive effect of a judgment, encompasses two distinct doctrines: claim preclusion and issue preclusion." *Gen. Elec. Med. Sys. Europe v. Prometheus Health*, 394 F. App'x 280, 283 (6th Cir. 2010) (citing *Taylor v. Sturgell*, 553 U.S. 880, 891-93, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008)); *see Doe ex rel. Doe v. Jackson Local Sch. Dist*., 422 F. App'x 497, 500 (6th Cir. 2011) ("Under Ohio law, the doctrine of res judicata consists of the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.") (quotation marks and citation omitted). The County's argument embraces the former type of res judicata—claim preclusion.

The doctrine of claim preclusion provides that "'a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or

12

occurrence that was the subject matter of the previous action.'"[4] *Carroll v. City of Cleveland*, 522 F. App'x 299, 303 (6th Cir. 2013) (quoting *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995)); *see Nat'l Amusements, Inc. v. City of Springdale*, 558 N.E.2d 1178, 1180 (Ohio 1990) ("It has long been the law of Ohio that an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit.") (emphasis added by the Ohio Supreme Court) (quotation marks and citation omitted). "Res judicata is particularly relevant when a party fails to present compulsory counterclaims pursuant to [Ohio R. Civ. P. 13(A)][5], which requires a party to raise all counterclaims against the opposing parties." *Jarvis v. Wells Fargo Bank, N.A.*, No. 09 CO 6, 2010 WL 2749602, at *5 (Ohio Ct. App. June 30, 2010).

Ohio law identifies four elements for claim preclusion: "'(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence

---

[4] In contrast, "issue preclusion" prohibits "the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action." *Carroll*, 522 F. App'x at 303 (quotation marks and citation omitted).

[5] Ohio R. Civ. P. 13(A) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

that was the subject matter of the previous action.'" *Carroll*, 522 F. App'x at 303 (quoting *Hapgood*, 127 F.3d at 393). With respect to the fourth prong, "[t]he Ohio Supreme Court has used the 'logical relation test' to decide whether claims, 'arise out of the same transaction or occurrence[.]'" *Jarvis*, 2010 WL 2749602, at *7 (quoting *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 103 (Ohio 1994)).

Under the "logical relation" test, "'[a] compulsory counterclaim is one which 'is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts.'" *Rettig Enters.*, 626 N.E.2d at 103 (quoting Staff Notes to Ohio R. Civ. P. 13). This test "comports with the object and purpose of [Ohio R. Civ. P.] 13(A) . . . to avoid a multiplicity of actions and to achieve a just resolution by requiring in one lawsuit the litigation of all claims arising from common matters." *Id*. (citations omitted). Therefore, counterclaims are considered compulsory if they "involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." *Id*. at 103 (quotation marks and citation omitted).

Citing in support the unreported decision in *Lisboa v. City of Cleveland Heights*, 576 F. App'x 474 (6th Cir. 2014), the County argues that all of the claims in the FAC are "logically related" to the claims raised in the state enforcement action and/or are "offshoots" of the County's attempts to enforce its consumer sales practices ordinances. In *Lisboa*, the city brought suit against nightclub owners in state court to abate the noise, fights, and other disturbances

14

caused by the nightclub.[6] The parties eventually entered into a consent decree. Shortly thereafter, the owners brought a federal civil rights action alleging due process and equal protection violations associated with the city's public nuisance action, asserting that the city's enforcement of its ordinances was racially discriminatory.

The district court ruled that the owners' constitutional claims were precluded because the owners could have, and should have, pursued these claims as counterclaims in the state court action. In affirming the ruling on appeal, the Sixth Circuit found that all of the elements of res judicata under Ohio law were met. Specifically with respect to the forth prong, the court noted that both actions involved the city's efforts to enforce its noise ordinances, and, therefore, "both sets of claims arise from a shared 'occurrence' or 'common nucleus of operative facts.'" *Id*. at 476. *See Rondigo, LLC v. Twp. of Richmond, Mich*., 522 F. App'x 283 (6th Cir. 2013) (constitutional claims against township were barred by res judicata because they involved the same parties and same events and should have been raised as counterclaims in the township's prior action to enforce zoning ordinances); *Carroll*, 522 F. App'x at 307 (federal civil rights action challenging city's collection of automated traffic enforcement was barred because "[t]he facts that underlie [the federal] suit—the issuance of traffic citations" to car lessees, rather than drivers—were "identical to the facts that confronted the plaintiffs when they received their notices of liability").

The County argues that all of the elements of claim preclusion is met because the two actions involve the same parties, and both center around the County's attempts to enforce its consumer sales practices ordinances. As such, the County insists that plaintiffs could have, and

---

[6] One of the owners also filed a state court action to enjoin the city from enforcing its noise ordinances. *Lisboa*, 576 F. App'x at 475.

should have, brought their claims in the state court enforcement action as counterclaims. Plaintiffs disagree, maintaining that the County has confused *compulsory* and *permissive* counterclaims, and rely on *Leatherworks P'ship v. Berk Realty*, 247 F. App'x 676 (6th Cir. 2007). In *Leatherworks*, the Sixth Circuit refused to apply claim preclusion to many of the plaintiff's claims because the events supporting these claims occurred after the parties settled the prior state court property action and, in fact, were predicated on violations of the settlement agreement. *Id*. at 680 ("It is therefore clear that claims maturing after serving are not considered compulsory counterclaims, and a defendant would be free to bring such claim in a later action.")

Unlike the situation presented in *Leatherworks*, the actions giving rise to the federal claims here—the County's investigation and enforcement of its consumer sales practices ordinances—occurred prior to the filing of the state court action and form the factual predicate for most of the claims asserted in federal court. The failure to provide a prompt "name-clearing" hearing or engage in pre-trial mediation, the refusal to consider plaintiffs' purported exculpatory evidence, the claimed lack of notice during the pre-suit investigation, and the decision to prosecute all occurred prior to the filing of the state court action and were known to plaintiffs when they answered the state court complaint.[7] Indeed, plaintiffs raised as defenses many of these same claims, including the selective nature of the prosecution, in their state court answer,

---

[7] Plaintiffs now allege that they discovered additional evidence to support their due process and equal protection claims during the state court proceedings. (FAC ¶ 30.) However, the mere discovery of additional evidence does not mean that plaintiffs were unable to present their constitutional claims when they filed their answer in state court. Additional supporting facts often come to light during the course of discovery.  Such an occurrence does not support a finding that plaintiffs were unaware of the nature of their claims. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 749-50 (6th Cir. 2002) (holding that the discovery of additional facts in support of a § 1983 claim did not mean that the claim itself was not barred by res judicata).

and were, therefore, aware of the need to protect their rights. So while it is true that permissive counterclaims are not later precluded, in this case, "[w]hat makes a counterclaim compulsory is *also* what triggers preclusion: that the claim arises from the same 'transaction or occurrence.'" *Lisboa*, 576 F. App'x at 476 (quoting *Rettig Enters.*, 626 N.E.2d at 102) (emphasis in original); *see, e.g., Rondigo*, 522 F. App'x at 286 (claim preclusion applied, despite the fact that plaintiff raised some claims in the prior action as affirmative defenses, because the claims were not raised as counterclaims).

At the motion hearing, plaintiffs' counsel suggested that the Court should place no stock in the fact that plaintiffs raised similar claims in the state court action because counsel, as a matter of course, raises such claims as defenses every time he represents a client sued by a governmental agency. Putting aside the ethics of boilerplate pleading, the dangers associated with raising such claims in affirmative defenses, rather than counterclaims, were clearly illuminated in the state enforcement proceeding. By ruling that the County had failed to meet its burden of proof, the state court judge found that she did not need to reach the affirmative defenses. Had plaintiffs presented their claims as counterclaims, the state court would have been forced—as plaintiffs' counsel conceded in the motion hearing—to address them. *See Jarvis*, 2010 WL 2749602, at *6 ("'The purpose of [Civ.R. 13(A)] is to settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims which arise from a single transaction or occurrence.'") (quoting *State ex rel. Massaro Corp. v. Franklin Cnty. Ct. Com. Pl.*, 584 N.E.2d 756, 758 (Ohio Ct. App. 1989)).

Still, plaintiffs persist that the claims in the FAC are not precluded because they are brought against both the County and the individual defendants, whereas the County was the only other party to the state court action. It is plaintiffs' belief that this fact defeats the second element

17

of Ohio's res judicata test—a prior action involving the same parties. There are two problems with plaintiffs' position. First, any constitutional claims against the individual defendants in their individual capacities are time-barred, as they were not filed within the 2 year statute of limitations for a § 1983 action, and the newly added claims cannot relate back to the original complaint. *See Pariscoff v. Columbus City Police Dep't*, No. 2:14-cv-00855, 2015 WL 1476651, at *3 (S.D. Ohio Mar. 31, 2015) ("Rule 15(c) cannot be construed to allow relation back for purposes of circumventing a statute of limitations to an amendment that adds new defendants to an action.") (citation omitted).

In its September 8, 2014 Opinion and Order, the Court dismissed these same individuals from the action, finding that they had only been sued in their official capacities. (Op. & Or. at 423 & 423 n.5, citing, among authority, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (official capacity suits only represent another way of pleading an action against an entity).) The County argues that plaintiffs knew or should have known by 2014 that they had potential claims against the individual county employees but chose only to raise claims against these individuals in their official capacities. *See Lovelace v. O'Hara*,[8] 985 F.2d 847 (6th Cir. 1993) (Sixth Circuit reversed a trial court's grant of leave to amend a complaint to sue a defendant in his individual capacity after the statute of limitations had run and the defendant had only been sued in his official capacity.)

Plaintiffs insist that they did sue the county employees in their individual, as well as their official, capacities. As the Court observed back in 2014, however, while the introduction of the

---

[8] Plaintiffs suggest that *Lovelace* has been "watered down" in recent years. Yet, the Sixth Circuit continues to rely on *Lovelace* to deny similar requests to amend. *See, e.g., Shaw v. Pfeiffer*, 295 F. App'x 735 (6th Cir. 2008) (trial court's denial of a motion for leave to amend affirmed where the original complaint sued "two city employees in their official capacities only").

complaint made a vague and generic reference to "persons sued in their individual capacities," the caption made clear that each individual was only sued in his or her "official" capacity. (Op. & Or. at 422 n.5.) "'Absent a clear notification that defendants are being sued in their individual capacities, courts must assume that they are being sued in their official capacities, only.'" *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1037 (E.D. Mich. 2005) (quoting *U.S. ex. rel Diop v. Wayne Cnty. Cmty. Coll. Dist.*, 242 F. Supp. 2d 497, 517 (E.D. Mich. 2003)); *see Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989) (the court assumes that a government official is being sued in her official capacity unless the plaintiff "properly allege[s] capacity in [his] complaint"). Even after the Court's ruling in 2014, plaintiffs did not seek to amend their pleadings at any time prior to the running of the statute of limitations. Under these circumstances, the Court cannot find that plaintiffs' vague reference to "persons" would have put each county employee on notice that he or she was being sued in his/her individual capacity.

Even if these claims were not time-barred, the second problem with plaintiffs' position—that the two actions are still between the same parties—would serve as a bar to a second litigation. While the individual county employees were not parties to the civil enforcement action, they were in privity with the County, who was a party. Under Ohio law, claim preclusion applies to all who were parties to a prior action, as well as those who are in privity with a party. *See Jaris*, 2010 WL 2749602, at *5 (citations omitted). "Further, courts have interpreted the term 'opposing party' in Civ.R 13(A) to also include parties who are 'in privity' with the named parties." *Id.* at *7 (citation omitted). A party is in privity with another "if it succeeds to an estate or an interest formerly held by the other, or where a party is so identified in interest with another that the party represents the same legal right." *Id.* (citing, among authority, *Lennon v. Neil*, 744 N.E.2d 228 (Ohio Ct. App. 2000)); *see Render v. Forest Park Police Dep't*, No. 1:07CV489,

2009 WL 1788342, at *4 (S.D. Ohio June 23, 2009) ("'Identity of interests' has been equated to privity.") (citation omitted).  The individual county employees and the County have a clear identity of interests as plaintiffs' claims against the individual county employees relate to their handling of the County's investigation and prosecution of its ordinances.[9]

All of the elements of claim preclusion are present in the instant case.  The state court action was litigated to a final judgment on the merits.  The two actions involve the same parties or their privies.  The federal constitutional claims, and the vindictive and malicious prosecution claims, could have (and should have) been brought in the state action.  Finally, the claims alleged in the FAC are "logically related" to the claims in the state court action because they "involve many of the same factual issues" and/or are "offshoots of the same basic controversy" between the parties, namely, the County's enforcement of its consumer protection ordinances.  Thus, under the doctrine of res judicata, plaintiffs are barred from prosecuting these claims here.  *See Hapgood*, 127 F.3d at 494 ("Claim preclusion 'requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it.'") (quoting *Nat'l Amusements*, 558 N.E.2d at 1180).

*Indirect Injury*

Claims brought under the Fourteenth Amendment must be tethered to a cognizable liberty or property interest.  "Without [the deprivation of] a protected liberty or property interest, there

---

[9] In briefing and at the motion hearing, plaintiffs referenced the unreported Sixth Circuit decision in *Perry v. Croucher*, 165 F.3d 28 (6th Cir. 1998) (table decision), for the proposition that "a judgment against a governmental unit does not bar suit against its officials in subsequent suits that assert liability of the officers in their personal capacities." *Id*. at *7. However, the court in *Croucher* was predicting how it believed that the Ohio Supreme Court would rule on such an issue, given the lack of any opinions addressing the issue. *Id.* at *6. In the years following *Croucher*, the Ohio Supreme Court reached the issue and concluded that defendants, first sued in their official capacities and then sued in their individual capacities, are in privity. *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1093 (Ohio 2004) (citation omitted).

can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Coll. v. Roth*, 403 U.S. 564, 579, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). Similarly, "[w]here there is no property interest, there is no takings claim." *Frazier v. City of Chattanooga*, 151 F. Supp. 3d 830, 839 (E.D. Tenn. 2015). According to the County, the claims brought under the Fourteenth Amendment fail for the additional reason that they are not supported by a legally cognizable right.

For the most part, the FAC describes the constitutional rights alleged to have been infringed in the broadest of terms. Still, the pleading does provide some clues as to the nature of those rights. For example, the FAC provides that information shared by county employees with the press during the course of the investigation "imposed a stigma on Plaintiffs that foreclosed their liberty and freedom to take advantage and pursue business and employment opportunities." (FAC ¶ 35.) The pleading further asserts that the County and its employees "destroyed and economically harmed the business of Plaintiff KH&C and eliminated the livelihood of Plaintiff Goodwin, without any concomitant compensation." (*Id.* ¶ 56.) In response to the County's dispositive motion, plaintiffs confirm that the interests they believe they have been deprived are tied to their allegations that the enforcement proceedings "'destroyed' their *business* and deprived Goodwin of his chosen '*livelihood*[.]'" (MTD/MJP Opp'n at 694 (quoting FAC ¶¶ 56, 61, 71) (emphases in opposition brief).)

Yet, it is undisputed that the County's enforcement complaint merely *requested* that the state court impose an injunction, damages, fines, and other sanctions for plaintiffs' alleged violations of county ordinances. (*See* FAC ¶ 25 (the County "petition[ed] for the imposition of penalties, fees, injunctive relief, freezing of all assets . . . .").) The state court action was resolved in favor of plaintiffs, and the County failed to secure any of the damages it sought. There is no

legal impediment to KH&C continuing to do business in Summit County, and Goodwin remains free to pursue a livelihood. So while the FAC alleges that KH&C's business has been "destroyed" and Goodwin has been "deprived" of his "livelihood[,]" plaintiffs are actually alleging that the enforcement proceeding had a negative impact on their reputations and future business prospects. The County argues that the Fourteenth Amendment does not cover these types of indirect or consequential damages. The Court agrees.

The Sixth Circuit has held that "[i]ndirect injuries from governmental action are not actionable under the Fourteenth Amendment." *See BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) (citing *O'Bannon v. Town Ct. Nursing Ctr*., 447 U.S. 773, 789, 100 S. Ct. 2467, 65 L. Ed. 2d 506 (1980)). Due process applies "only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon, or to inhibit laws that indirectly work harm and loss to individuals." *O'Bannon*, 477 U.S. at 789 (quotation marks and citation omitted). It is for this reason that "[l]ost sales" or harm to "reputation" are not sufficient to state a valid claim under the Fourteenth Amendment. *BPNC*, 147 F. App'x at 531 (citations omitted).

In each of the cases relied upon by plaintiffs, the government took direct action to prohibit or impair the business in question. *See United Pet Supply, Inc. v. City of Chattanooga*, 921 F. Supp. 2d 835, 850-51 (E.D. Tenn. 2013) (pre-process revocation of building permit sufficient to support a due process claim); *B & B Target Ctr., Inc. v. Figueroa-Sancha*, 871 F. Supp. 2d 71, 78 (D.P.R. 2012) (revocation of gunsmith's license constituted a cognizable constitutional injury); *City of Cincinnati v. Correll*, 49 N.E.2d 412, 414 (Ohio 1943) (ordinance imposing barber shop closing hours unconstitutional). Here, in contrast, there was no license or permit revocation, there was no injunction prohibiting plaintiffs from operating a business, and

there was no other legal impediment to conducting business (i.e., fines and penalties) imposed. While these things were threatened, plaintiffs were afforded process first—process that resulted in the County being foreclosed from imposing the restrictions it sought. Because the County did not deprive plaintiffs of a constitutionally cognizable right, plaintiffs' due process and takings claims are subject to dismissal for this additional reason.

*Procedural Due Process*

The Court finds it necessary to also address certain claim-specific arguments relative to plaintiffs' procedural due process claim. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) (citation omitted). "Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process." *Id*. (citing *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002)).

The Court has already determined that plaintiffs have not alleged the deprivation of a protected property or liberty interest (or that they were actually deprived of any such right), and the claim fails for this reason alone. Even if plaintiffs had identified the deprivation of a constitutionally protect interest, however, the claim would have failed because the process provided comported with the requirements of the Due Process Clause. "Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing." *Warren*, 411 F.3d at 709 (citing *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994)); *see Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 572 (6th Cir. 2008)

23

(procedural due process requires notice and an opportunity to be heard) (citation omitted). It is undisputed that plaintiffs received process in the form of a civil judicial proceeding wherein they were permitted to test the County's case and offer witness testimony and other evidence in defense. Where a government makes "ordinary judicial process" available, that process is generally considered sufficient to satisfy due process requirements. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197, 121 S. Ct. 1446, 149 L. Ed. 2d 391 (2001). Further, plaintiffs have not alleged that they were restricted in any way, during the civil enforcement proceeding, from offering defenses or evidence, or otherwise protecting their rights.

Instead, plaintiffs complain that the damage was done before the trial ever took place. They argue that "businesses subject to a consumer affairs investigation are guaranteed the right *not* to have their names publicly dragged through the mud until the enforcement proceedings are initiated[.]" (MTD/MJP Opp'n at 697, emphasis in original.) In support they cite to Ohio Rev. Code § 1345.05(A)(7), which provides:

> In carrying out official duties, the attorney general shall not disclose publicly the identity of suppliers investigated or the facts developed in investigations unless these matters have become a matter of public record in enforcement proceedings … or the suppliers investigated have consented in writing to public disclosure.

Plaintiffs allege that, when the County set aside its statutory duty and established practice of not commenting on pending investigations, it violated plaintiffs' due process rights. (*See* FAC ¶¶ 30, 32, 40, 42-43.) They further argue that the county prosecutor's decision to "hijack" the state investigation and proceed with its enforcement action without holding state law mandated pre-litigation mediation rose to the level of a constitutional violation. (MTD/MJP Opp'n at 697-98; *see* FAC ¶¶ 24, 26) Along those same lines, plaintiffs allege that the County's failure to offer plaintiffs a prompt "name clearing" hearing amounted to a deprivation of procedural due process.

24

(FAC ¶¶ 11, 42-43.) At the motion hearing, plaintiffs' counsel confirmed that his clients' procedural due process deprivation was tied to the County's failure to follow governing statutes, local ordinances, and internal policies during its investigation.

However, it is well-settled that "the Due Process Clause does not protect against the deprivation of state procedural rights." *Mills v. Cnty. of Lapeer*, 498 F. App'x 507, 514 (6th Cir. 2012) (citing, among authority, *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ("[A] mere violation of . . . state law will not establish a proper claim under § 1983.")); *Jaber*, 487 F. App'x at 998 ("the failure to follow a state law or procedure does not itself violate due process") (citation omitted). "'[I]t is only when the agency's disregard of its own rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions." *Jaber*, 487 F. App'x at 998 (quoting *Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976)).

Thus, the question becomes what process is due. Again, plaintiffs look to the statutes, ordinances, and policies themselves. At the hearing, plaintiffs' counsel argued that the relevant state laws and procedures had a due process quality to them, such that their violation rose to the level of a due process violation.[10] Yet, the process that is due a citizen cannot be found in state law or county ordinance. *See Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 471 (6th Cir. 2008) (quotation marks and citation omitted). "Rather, the Constitution defines what procedures are sufficient to satisfy due process." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)); *see, e.g., Eaton v. Charter Twp. of Emmett*, 317 F. App'x

---

[10] In a related argument, plaintiffs' counsel suggested that the property interest his clients were deprived was the procedure, itself, as set out in the ordinances and state statutes. The Sixth Circuit has held, however, "that process mandated by municipal ordinances or state law are insufficient to establish a property interest." *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 469 (6th Cir. 2008) (citations omitted).

444, 448 (6th Cir. 2008) (failure to follow municipal ordinances did not rise to the level of a due process violation). Plaintiffs were afforded notice and an opportunity to be heard before the imposition of any legal restrictions on their ability to operate their business, and the Due Process Clause requires nothing more. *See Chandler*, 296 F. App'x at 472 (notice and opportunity to be heard before revocation of building permit satisfied procedural due process) (collecting cases). Thus, the County's alleged violation of its "no comment" policy, and its failure to offer pre-litigation mediation, do not rise to the level of a procedural due process violation.

For all of the same reasons, the failure to afford a pre-trial "name clearing" hearing does not raise due process concerns. Additionally, plaintiffs have failed to identify any governing law that would support the finding of a requirement for such a hearing outside the context of the termination of a public employee. *Cf. Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir. 1997) ("A name-clearing is required only when a nontenured public employee is dismissed from his or her job and publicly stated reasons that reflect on the terminated employee's honesty or integrity are replied upon, either explicitly or implicitly. There is no requirement that a name-clearing hearing be provided for disappointed bidders and others desiring to do business with governmental units or public agencies.") Of course, even when raised by a terminated public employee, the individual still must allege and establish that he requested and was denied such a hearing. *See Baar v. Jefferson Cnty. Bd of Educ.*, 311 F. App'x 817, 826 (6th Cir. 2009) ("[A] plaintiff's failure to request a name-clearly hearing is fatal to a claim alleging a deprivation of a liberty interest without due process.") (quotation marks and citation omitted). No such request was alleged in the FAC, and plaintiffs' counsel conceded at the motion hearing that plaintiffs did not request a name-clearing hearing.

Accordingly, plaintiffs' procedural due process claim is subject to dismissal for each of

these additional reasons.

*Statutory Immunity for State Law Claims*

As previously discussed, claim preclusion bars plaintiffs' vindictive and malicious prosecution claims. The County argues that the state law claims (including the abuse of process claim) should be dismissed for the additional reason that the County is entitled to statutory immunity under Ohio's Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.02, which—except in five specific circumstances not at issue in this litigation—protects a municipality from liability for intentional torts. Abuse of process and malicious prosecution are among the intentional torts that are barred by § 2744.02. *See Scott v. Giant Eagle, Inc.*, No. 1:12-CV-03074, 2013 WL 1874853, at *6 (N.D. Ohio May 3, 2013) (holding that political subdivisions are immune from intentional torts, such as malicious prosecution and abuse of process).

Yet, it is plaintiffs' position that statutory immunity is unavailable because the FAC has alleged that the individual County employees acted in bad faith, and they cite Ohio Rev. Code § 2744.03(A)(6) in support. (Mot. Amend Reply at 725.) That particular statutory exception only applies to claims brought against individual employees. *Fabrey v. McDonald Vill. Police Dep't*, 639 N.E.2d 31, 35 (Ohio 1994) ("While we agree that individual employees may be held liable for their malicious, bad faith, wanton or reckless acts, R.C. 2744.03(A)(6) by its very terms applies only to individual employees and not to political subdivisions. It therefore has no effect on the liability of defendants McDonald Village Police Department and McDonald Village.") As set forth above, plaintiffs failed to properly raise claims against the municipal employees in their individual capacities. Therefore, the bad faith exception to individual employee immunity in § 2744.03(A)(6) is inapplicable.

27

Even if plaintiffs had managed to plead individual capacity claims, the state law claims would still fail, as a matter of law. Beginning with plaintiffs' vindictive and malicious prosecution claims, issue preclusion would bar these claims because the state court previously determined that the County acted in good faith when it instituted enforcement proceedings against plaintiffs.

While claim preclusion bars all claims that were, or could have been raised in a prior action, "issue preclusion, or collateral estoppel, precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated in a prior action that was based on a different cause of action." *State ex rel. Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 592 (Ohio 2010) (quotation marks and citation omitted). Under Ohio law, the doctrine of issue preclusion applies when a fact or issue: "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privy with a party to the prior action." *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994) (citation omitted).

In its order denying plaintiffs summary judgment, the state court determined that the County had "properly complied" with all applicable ordinances and "properly referred" the matter for prosecution. (St. MSJ Order at 396.) Additionally, the state court found that plaintiffs failed to establish that they were "singled out" for prosecution or that the County "acted in bad faith." (*Id.* at 397.)  This ruling satisfies all three requirements for collateral estoppel. The precise issue of the County's alleged bad faith in bringing the enforcement proceeding was determined by the state court, after the parties had engaged in discovery, and was integral to the trial court's summary judgment ruling. Moreover, plaintiffs were obviously parties to that prior action. Issue preclusion, therefore, bars plaintiffs' vindictive and malicious prosecution claims.

28

Finally, the abuse of process claim would fail for the additional reason that the FAC does not set forth any factual allegations that, taken as true, would support a finding that the enforcement proceeding, once instituted, was perverted to serve some improper purpose. Under Ohio law, "[a] claim for Abuse of Process contains three elements: (1) a legal proceeding that has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process." *All Metal Sales, Inc. v. All Metal Source, LLC*, No. 1:10 CV 2343, 2011 WL 867020, at *1 (N.D. Ohio Mar. 11, 2011) (citation omitted).

Here, the FAC does not allege any specific wrongful acts by the County *after* the enforcement action was filed that would constitute a perversion of the process. *See Gugliotta v. Morano*, 829 N.E.2d 757, 768 (Ohio Ct. App. 2005) (abuse of process "does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse' of process once a proper claim has been commenced") (quotation marks and citation omitted). Rather, the abuse of process claim merely alleges that various county employees "brought the aforesaid judicial proceeding for an ulterior purpose or purposes . . . ." (FAC ¶ 61.) Again, an abuse of process claim cannot be premised on an allegation that an action was *instituted* for an improper purpose. *See Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999) (abuse of process claim cannot be based upon filing of a civil action "with bad intentions") (quotation marks and citation omitted); *Griffin v. City of Heath, Ohio*, No. 2:04-CV-119, 2006 WL 745294, at *19 (S.D. Ohio Mar. 21, 2006) (dismissing abuse of process claim premised on allegation that it was "brought for an improper, ulterior motive").

In their opposition brief, plaintiffs point to paragraph 30, contained within plaintiffs' due

29

process and equal protection claims, suggesting that it describes "acts committed by Defendants to pervert the legal process even after the state court lawsuit was filed." (MTD/MJP Opp'n at 703.) The only "act" identified in paragraph 30 that took place after the enforcement proceeding was instituted related to plaintiffs' allegation that unidentified county employees gave "wildly inconsistent under oath testimony" during discovery. (FAC ¶ 30.) Even if this allegation could be generously interpreted as alleging that the County knowingly offered "false" evidence, it would fall short of establishing a perversion of process. *See West Bend Mut. Ins. Co. v. Westfield Ins. Grp.*, No. 1:13CV60, 2013 WL 5467821, at *7 (S.D. Ohio Sept. 30, 2013) ("allegations concerning the falsification of evidence" do not establish an abuse of process, but relate to litigation conduct that can be remedied under "Civil Rule 11 or Ohio Revised Code § 2323.51")[11] Because plaintiffs have failed to plead facts that support an essential element of their abuse of process claim, it fails as a matter of law.

Because plaintiffs face multiple legal barriers to bringing the claims raised in the FAC, the Court finds that it would be futile to permit plaintiffs to amend the complaint. Such an amendment would not survive a motion to dismiss because the factual allegations offered either do not state a cause of action for which relief is plausible or do not cure the numerous deficiencies in the original complaint.

---

[11] Interestingly, plaintiffs did seek sanctions under Rule 11 of the Ohio Rules of Civil Procedure and Ohio Rev. Code § 2323.51, but the state trial court denied the motion.

## IV. CONCLUSION

For all of the foregoing reasons, the County's motion to dismiss and/or motion for judgment on the pleadings is granted, and plaintiffs' motion to amend is denied. All claims asserted by plaintiffs are dismissed and this case is closed.

**IT IS SO ORDERED**.

Dated: September 21, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**